**Eugene C. VANDERGRIFF,**
**Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 84A05–0312–CR–664.**

Court of Appeals of Indiana.

Aug. 6, 2004.

Transfer Denied Sept. 28, 2004.

Robert D. Hepburn, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Eugene C. Vandergriff appeals his convictions for Neglect of a Dependent, as a Class C felony, and Battery, as a Class D felony.[1] Vandergriff's sole contention on appeal is that his convictions violate the Indiana Double Jeopardy Clause.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On July 25, 2003, Vandergriff was caring for his infant son, C.V. Around 7:30 p.m., Vandergriff drove C.V. to the shopping center where C.V.'s mother, Danielle Spear worked. During one of her breaks, Spear visited with C.V. As the end of her break neared, Spear, while still holding the baby, walked with Vandergriff to the car.

At that point, Vandergriff and Spear began to argue. Vandergriff then grabbed C.V.'s neck and thigh area and yanked him from Spear's arms, causing C.V. to cry. Vandergriff "threw the baby into the car seat," which had been placed on the trunk of the car. Transcript at 62. After strapping the baby into the car seat, Vandergriff placed the car seat in the back seat of the vehicle and started to pull away.

After he left the parking lot, Vandergriff stopped the car. While the engine was still running, he exited the car and ran toward Spear with his fists clenched. Fearing what he might do to Spear, a store patron, Robert Waterman, interceded. Although Vandergriff was still upset, he did not hit Spear. Vandergriff then returned to his car and sped off.

Another store patron, Teresa May Guinn, saw what had occurred and called 911. During her conversation with the 911 operator, Guinn described the incident and Vandergriff's car. Guinn also provided the operator with the couple's address, which she had obtained from Spear.

Officer Mike Finney of the Terre Haute Police Department responded to the call and arrived at the shopping center. After talking to Spear and the witnesses, Officer Finney transported Spear to the couple's apartment, where Vandergriff had returned with C.V. There, Spear attempted to persuade Vandergriff to open the apartment door so she could check on the child. Additional police officers, who had been dispatched to the apartment and who had already arrived, also asked Vandergriff to open the door. Because Vandergriff did not comply with their requests, the officers threatened to kick in the door.

Vandergriff informed the officers that he was standing next to the door with the

---

1. Vandergriff was also charged and convicted of Resisting Law Enforcement, as a Class A misdemeanor. However, he does not challenge that conviction on appeal.

baby. When Vandergriff refused to comply with the officers' additional requests to open the door, the officers decided to forcibly open the door. With Spear's permission, the officers then kicked in the door. As they proceeded, Vandergriff attempted to hold the door while still holding the baby. Eventually the officers gained entry to the apartment. Vandergriff tossed C.V. onto the living room floor and ran. C.V. "hit the [hardwood] floor" and "rolled into a footstool." Transcript at 217.

One of the officers immediately rescued C.V., who had visible injuries on his right forehead and shoulder. The other officers apprehended Vandergriff, who was eventually taken into custody. C.V. was transported to the hospital. There, it was discovered that he had bruises on his right temple, upper chest area, shoulder, side, hip, and leg and a large bruise and scrape on his left shoulder. C.V. was observed overnight at the hospital and released the next day. For a week following his release, C.V. was given Tylenol for his injuries. For about a month and a half, C.V. experienced difficulty straightening his right leg and cried when anyone touched it.

On July 31, 2003, the State charged Vandergriff with neglect, as a Class C felony, and battery, as a Class D felony. During a jury trial, which began on November 5, 2003, the State presented evidence regarding the altercations at the shopping center and at the couple's home. During closing argument, the prosecutor informed the jury that it could find him guilty of neglect based on any one of the following incidents: (1) when Vandergriff grabbed the baby at the shopping center; (2) when he attempted to hold the door, while holding the baby, during the forced entry; or (3) when he tossed the baby onto the hardwood floor after the officers entered the apartment. With regard to the battery charge, the prosecutor told the jurors that they could find Vandergriff guilty based on the grabbing or tossing incident. Before deliberations began, the trial court instructed the jury on the elements required to prove each offense. However, the instructions did not indicate on which incident the prosecutor was basing each charge.

The jury found Vandergriff guilty as charged. The trial court sentenced him to eight years for neglect and three years for battery to be served concurrently. He now appeals.

## DISCUSSION AND DECISION

Vandergriff contends that his convictions for neglect and battery violate Indiana's Double Jeopardy Clause. "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). In this case, Vandergriff challenges his dual convictions under the actual evidence test, which "prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (citing *Richardson*, 717 N.E.2d at 53). The defendant must show that the evidentiary facts establishing the elements of one offense also establish all of the elements of the second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002). Thus, even if "each charge utilizes the same factual event," no constitutional vio-

lation will be found if the second offense "requires additional evidentiary facts establishing the essential elements." *Davis,* 770 N.E.2d at 324.[2] *See also Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (holding that convictions for burglary, as a Class A felony, and robbery, as a Class B felony, did not violate state double jeopardy clause where each offense required proof not required for the other).

Here, the State charged Vandergriff with neglect, as a Class C felony,[3] and battery, as a Class D felony.[4] The trial court instructed the jury that to find Vandergriff guilty of neglect, it had to find that Vandergriff (1) knowingly, (2) placed C.V. in a situation that endangered C.V.'s life or health, (3) when C.V. was a dependent,[5] (4) when Vandergriff had the care, custody and control of C.V., and (5) Vandergriff's actions resulted in bodily injury to C.V. With regard to the battery charge, the court instructed the jury that it had to find that Vandergriff (1) knowingly, (2) touched C.V., (3) in a rude, insolent or angry manner, (4) that the touching resulted in bodily injury to C.V., and (5) C.V. was less than fourteen years of age and

Vandergriff was at least eighteen years of age when the offense occurred.

A comparison of the elements reveals that, even assuming the jury relied upon the same incident to establish the two offenses, additional evidentiary facts were required to prove each offense. Vandergriff's act of touching C.V. establishes that Vandergriff knowingly placed C.V. in a situation that endangered his life or health, resulting in bodily injury, and that Vandergriff knowingly touched C.V. in a rude, insolent or angry manner, resulting in bodily injury. Yet, to find Vandergriff guilty of neglect, the jury also had to find that C.V. was a dependent and that Vandergriff had the care, custody and control of C.V. To find Vandergriff guilty of Class D felony battery, the jury was required to find that C.V. was less than fourteen years of age and Vandergriff was at least eighteen years of age. While the same evidence may have established that C.V. was a dependant and under fourteen years of age, clearly additional evidentiary facts were required to prove that Vandergriff had the care, custody and control of C.V. and that Vandergriff was at least eighteen years of age. Thus, there is no constitutional dou-

2. In *Davis,* for example, no double jeopardy violation was found where the same factual event, a stabbing, was used to establish burglary, as a Class A felony, and attempted murder. *Id.* The *Davis* court specifically noted that additional evidentiary facts were required to prove three elements of the burglary—(1) breaking and entering, (2) the building or structure of another (3) with intent to commit a felony in it. *Id.*

3. Neglect, as a Class D felony, is committed when "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, ... knowingly or intentionally ... places the dependent in a situation that endangers the dependent's life or health." Ind.Code § 35–46–1–4(a)(1). That offense is elevated to a Class C felony if it results in bodily injury. I.C. § 35–46–1–4(b)(1).

4. Battery, as a Class B misdemeanor, is committed when a person "knowingly or intentionally touches another person in a rude, insolent, or angry manner." I.C. § 35–42–2–1(a). The offense is elevated to a Class A misdemeanor if the touching results in bodily injury to another and to a Class D felony if the touching results in bodily injury to "a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." I.C. §§ 35–42–2–1(a)(1), (2)(B).

5. The jury was instructed that a dependent is "an unemancipated person who is under eighteen years of age; or a person of any age who is mentally or physically disabled." Transcript at 348–49.

ble jeopardy violation. *See Minton v. State*, 802 N.E.2d 929, 937 (Ind.Ct.App. 2004) (holding convictions for child molesting and sexual misconduct with a minor did not violate state double jeopardy clause where child molesting required proof that child was under fourteen years of age and offense of sexual misconduct with a minor required proof that child was at least fourteen but less than eighteen years of age), *trans. denied.*[6]

■ Even where no constitutional violation has occurred, multiple convictions may nevertheless violate the "rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Pierce*, 761 N.E.2d at 830. These rules fall under broader categories set forth by Justice Sullivan in his concurring opinion in *Richardson* and include the following: (1) "Conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished;" (2) "Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished;" (3) "Conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished;" (4) "Conviction and punish-

ment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished;" and (5) "Conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 55–56 (Sullivan, J., concurring).

These categories were applied by a majority of our supreme court in *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) to determine if a defendant's convictions for murder and carrying a handgun without a license violated double jeopardy principles. In reciting the five categories, the majority noted that only one, lesser-included offenses, "presumably covered . . . constitutional Double Jeopardy," thereby implying that the remaining categories addressed common law violations. *Id.* Ultimately the majority concluded that Guyton's claim did not succeed under any of Justice Sullivan's categories because carrying a gun and using a gun were two different crimes. *Id.*

In the double jeopardy cases which followed *Guyton*, our supreme court relied upon *Guyton* in analyzing possible common law violations. *See Carrico v. State*, 775 N.E.2d 312, 314 (Ind.2002); *Robinson v. State*, 775 N.E.2d 316, 320 (Ind.2002);

---

6. Vandergriff relies upon *Roby v. State*, 742 N.E.2d 505 (Ind.2001), where our supreme court concluded that dual convictions for knowingly killing a child and neglect, resulting in serious bodily injury, violated the actual evidence test. In particular, the court found that there was a reasonable possibility that the jury used the same evidence to establish the knowing killing of a child and the serious bodily injury of the neglect charge. *Id.* at 509. But *Roby* was decided before *Spivey*, 761 N.E.2d at 833, which clarified that under the actual evidence test, the defendant must show that the evidentiary facts

establishing the elements of one offense must also establish all of the elements of the second offense. Thus, Vandergriff's reliance on *Roby* is not well taken. Arguably, with regard to the neglect charge, additional evidentiary facts would have been required to prove that the child was a dependent and that the defendant had the care, custody and control of the dependent. Therefore, even though the same factual event, the killing of a child, was used to establish both charges, additional evidentiary facts would have been required to establish other elements of neglect.

*Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003) (Sullivan, J., concurring) (all analyzing whether multiple convictions were improperly enhanced by the same bodily harm). However, as Justice Boehm observed in his concurring opinion in *Guyton*, the majority in *Guyton* did not provide any guidance for determining when two convictions are based upon the same act. *Guyton*, 771 N.E.2d at 1151 (Boehm, J., concurring). Consequently, Justice Boehm proposed that courts "look to see if, under the statutes, charging instruments, evidence and arguments of counsel, ... the facts establishing one crime are the same as the facts establishing another...." *Id.* at 1154. Justice Boehm further proposed that the determination be made as a matter of law "without any effort to analyze what the jury might have considered." *Id.*

Applying his proposed analysis, Justice Boehm concluded, as a matter of law, that separate facts supported Guyton's convictions for murder and possession of a handgun without a license. *Id.* Justice Boehm explained that the court simply could not say that "there is no reasonable possibility the jury based both of Guyton's convictions on the same set of facts" since Guyton was in possession of the gun as he fired it. *Id.* However, in his opinion, the court could

and did conclude that the offense of possessing a handgun had been committed before Guyton ever fired the gun. *Id.* Therefore, according to Justice Boehm, the facts "supporting the murder [did] not embrace all the facts supporting the handgun offense." *Id.*

In this case, Vandergriff's claim arguably falls under Justice Sullivan's second category described as "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring).[7] Thus, we apply Justice Boehm's analysis by looking to the statutes, charging instruments, evidence and arguments of counsel to determine, as a matter of law, whether the facts establishing the neglect are the same as the facts establishing the battery.

Initially, we note that the facts surrounding either the grabbing incident at the shopping center or the tossing incident at the couple's home could have supported the convictions.[8] Yet, as Vandergriff rightly notes, the prosecutor failed to inform the jury on which incident he was relying to prove each charge. Rather, the State allowed the jury to make that determination. However, the State contends

7. Justice Boehm described this category in his concurring opinion in *Richardson* as a prohibition against multiple convictions based on "the same act and consequences." *Richardson*, 717 N.E.2d at 64 (Boehm, J., concurring). Justice Boehm explained that "[m]ultiple convictions ... are barred by the rule ... that 'before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct.'" *Richardson*, 717 N.E.2d at 64 (Boehm, J., concurring) (quoting *Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724, 727 (1972), *cert. denied*, 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d 404 (1973) and *disapproved by Elmore v. State*, 269 Ind. 532, 382 N.E.2d

893 (1978)). This common law rule was recently relied upon to prohibit dual convictions stemming from one single act of arson. *See Montgomery v. State*, 804 N.E.2d 1217, 1225 (Ind.Ct.App.2004), *trans. denied*.

8. Contrary to Vandergriff's assertions, the neglect charge could not have been based on his act of attempting to hold the door during the forced entry. As charged, the crime of neglect required the jury to find that the criminal act resulted in bodily injury. *See* I.C. § 35-46-1-4(b)(1). Here, there was no evidence that the child was hit by the door or otherwise suffered bodily injury as a result of this act.

that "there was overwhelming evidence of separate and distinct incidences and multiple injuries to the victim." Brief of Appellee at 10. The State further notes that during closing argument, the prosecutor referred to the grabbing incident as the primary act establishing the neglect charge, while defense counsel referred to Vandergriff's act of tossing the child as the battery. Transcript at 303, 334.

Although we do not condone the prosecutor's method of bringing the charges in this case, the two convictions do not violate the common law rule prohibiting dual convictions for the same act. As Justice Boehm noted in *Guyton*, we cannot say that there is no reasonable possibility that the jury used the same evidence to support the neglect and battery charges. However, we can say that the facts supporting these two crimes are separate and distinct and, thus, no common law double jeopardy violation occurred. Overwhelming evidence of two distinct crimes was presented to the jury. In addition, the jury was not directed, through closing argument or in final instructions, to base the charges on the same act. Further, at one point during closing argument the prosecutor referred to the grabbing incident as the one establishing the neglect, and defense counsel referred to the tossing incident as the one establishing the battery. Therefore, we conclude, as a matter of law, that the facts supporting the neglect do not embrace all of the facts supporting the battery. We hold that Vandergriff's convictions for Class C felony neglect and Class D felony battery may stand.

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.