**Sledge SEIDE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A04–0204–CR–00175.**

Court of Appeals of Indiana.

Feb. 26, 2003.

Jon Aarstad, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Sledge Seide appeals his convictions for three counts of Robbery While Armed with a Deadly Weapon[1] and three counts of Criminal Confinement While Armed with a Deadly Weapon,[2] all class B felonies. Seide contends that the prosecutor committed misconduct during closing argument and that such misconduct requires a new trial. In the alternative, Seide argues that his convictions for criminal confinement were improperly elevated to class B felonies based on evidence of the same gun used to enhance the robbery convictions to class B felonies. Concluding that the prosecutor

committed no misconduct and that the convictions were properly elevated, we affirm. We remand, however, for the trial court to enter an abstract of judgment[3] for the criminal-confinement convictions as class B felonies.

## FACTS

Around 6:00 p.m. on July 26, 2000, Benel Jacques and two friends went to Seide's body shop in Evansville. Jacques testified that he wanted Seide to give him a quote on the cost to paint Jacques's Ford Escort. Seide and three other men were at the body shop when Jacques and his friends arrived. After talking briefly, Seide and his companions each pulled out a handgun and ordered Jacques and his two friends to put up their hands.

The three were taken into an office and bound with duct tape and plastic cable ties. The cable ties were placed around their wrists and ankles and covered with duct tape. Duct tape was also used to cover the men's mouths and eyes. Jacques thought he was going to die.

Seide and his companions demanded money from Jacques and his two friends. Jacques handed over his gold necklace, bracelet, ring, watch, and $250 in cash. A watch, wallet, credit cards, and a passport were taken from Jacques's friends. Seide later took the duct tape off the men's mouths, and the three begged not to be killed. Around 10:30 p.m., after holding the men for over four hours, Seide and his companions released the three men. When they drove off, Seide and his com-

---

1. Ind.Code § 35–42–5–1(1).

2. Ind.Code Ann. § 35–42–3–3 (West 1998). Indiana's statute proscribing criminal confinement was nonsubstantively amended in 2002.

3. Seide indicates that there were no verdict forms or abstract of judgment in the clerk's file. Appellant's App. p. 6 n. 3.

panions followed for a distance and then turned away.

Jacques drove home to his apartment to insure that his wife was safe, and then he and his two friends drove to a gas station near the body shop. From there, Jacques called the police. Evansville Police Department Officer Douglas Kemmerer arrived at the gas station, where he found the three men agitated and nervous. He noticed gray sticky residue on their faces and hair. Early the next morning, the police searched the body shop. They found several bundles of used duct tape and cut cable ties. Hair was stuck to some pieces of the duct tape.

An information charged Seide with three counts of robbery while armed with a deadly weapon and three counts of criminal confinement while armed with a deadly weapon, all as class B felonies. After a trial, a jury found Seide guilty as charged. The use of a deadly weapon was used to enhance both the robbery and criminal-confinement convictions to class B felonies. At the sentencing hearing, the trial court entered judgment of conviction against Seide for three counts of robbery as class B felonies and for three counts of criminal confinement as class D felonies. The trial court sentenced Seide "for a period of ten years, those ten years are to be executed at the Indiana Department of Correction[ ]. The Counts are to run concurrent with each other." Appellant's App. p. 134. The CCS, however, reflects the entry of judgment of conviction for all six offenses as class B felonies. Seide now appeals.

## DISCUSSION AND DECISION

### I. Prosecutorial Misconduct

■ Seide contends that the prosecutor committed misconduct during closing argument by referring to Seide's character and credibility. Because Seide chose not to object to any portion of the prosecutor's closing argument, he acknowledges that he must prove the prosecutor's statements amounted to fundamental error. We agree that "[o]nce waived, an issue will warrant reversal only if it amounts to fundamental error." *Carter v. State*, 738 N.E.2d 665, 677 (Ind.2000). " 'Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process. The error must be so prejudicial to the rights of a defendant as to make a fair trial impossible.' " *Id.* (quoting *Charlton v. State*, 702 N.E.2d 1045, 1051 (Ind.1998)). For prosecutorial misconduct to amount to fundamental error, the prosecutor's conduct must have " 'subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision.' " *Charlton*, 702 N.E.2d at 1051 (quoting *Carter v. State*, 686 N.E.2d 1254, 1262 (Ind.1997)).

■ Obviously, before prosecutorial misconduct can be found to have resulted in fundamental error, we must first determine whether misconduct has occurred. In judging the propriety of a prosecutor's remarks, we consider statements in the context of the argument as a whole. *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind. Ct.App.1999). It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based on his analysis of the evidence. *Id.*

■ Seide maintains that the prosecutor improperly compared Seide's and Jacques's character during closing argument. More specifically, Seide argues that the prosecutor inappropriately urged the jury to consider Seide's inability to maintain steady employment, his unfaithfulness to a live-in girlfriend, and his parasitical dependence on a girlfriend who works two jobs to support him and herself. The prosecutor also noted that Seide was a

friend of a man convicted of a cocaine offense.

Having read the prosecutor's statements in context, we detect no impropriety. First, the prosecutor did make favorable mention of Jacques's character, namely that Jacques was hardworking and supported his wife—not a live-in girlfriend. Tr. p. 343. However, his mention of Jacques's character was in response to defense counsel's insinuation during opening argument that Jacques was involved in a drug deal when he was robbed. The prosecutor argued: "[Defense counsel] gets up here and the first thing he says this case was all about drugs." Tr. p. 343. The prosecutor later noted that Jacques had nothing to hide and was cooperative with the police. Tr. p. 344.

As for Seide's character, it is undisputed that the prosecutor summarized only what Seide's own witnesses said about him during Seide's case-in-chief. Moreover, the prosecutor, while referring to Seide's character and credibility, also used those facts to construct a theory about Seide's motive for robbing Jacques and his friends. Somehow, despite his chronic unemployment, Seide had money and drove a nice

car. The body shop Seide opened with his ex-convict friend apparently never produced a "finished job" for the few months it was open for business. Analyzing the evidence presented, the prosecutor suggested that Seide robbed Jacques and his two friends, mistakenly believing that the three had drugs. Tr. p. 346. Reading the statements in context, we find no prosecutorial misconduct—much less fundamental error.

## II. Enhanced Confinement Convictions

 Seide next contends that the enhancements of his robbery convictions and criminal-confinement convictions to class B felonies based on the same firearm violate the prohibition against double jeopardy found in Article I, Section 14 of the Indiana Constitution.[4] In addressing this claim, we note that our supreme court has held that Article I, Section 14 of the Indiana Constitution provides greater protection than the federal constitution. *Richardson v. State*, 717 N.E.2d 32, 49, 55 (Ind.1999). Recently, our supreme court revived Justice Sullivan's analysis from his concurring opinion in *Richardson* and concluded that five situations[5] will violate the

---

4. Article I, Section 14 provides: "No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself." Ind. Const. art. I, § 14. Seide, with good reason, does not argue that the three convictions for robbery and the three convictions for criminal confinement violate the Indiana Constitution's Double Jeopardy Clause. Generally, double jeopardy does not prohibit convictions of confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind.2001). In those circumstances, criminal confinement is a "separate criminal transgression." *Id.* In *Hopkins*, our supreme court explained that the defendant's confinement of the victims extended "well beyond" what was necessary to rob them because the defendant forced his victims into

a basement at gunpoint, robbed them, and then went upstairs to search the house. *Id.* at 640. The court observed that it was not necessary to force the victims into the basement to rob them or to force them to stay in the basement as he searched the house. *Id.* Based on the protracted nature of the incident, there was no "sufficient substantial likelihood" that the jury used the same evidentiary facts to convict Hopkins of robbery and confinement. *Id.* Likewise, because Seide held the three men for over three hours after robbing them, there is no reasonable possibility that the jury used the same evidentiary facts to convict Seide of three counts of robbery and three counts of confinement.

5. Our supreme court described the five situations as follows:
 —conviction and punishment for an enhancement of a crime where the enhance-

double jeopardy prohibition of the Indiana Constitution. *Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring)). Seide appears to invoke the category that prohibits enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. *See id.*

Seide relies on *Pierce v. State,* where our supreme court held that the same bodily injury may not form the basis of both a class-A-felony burglary enhancement and a class-B-felony robbery enhancement. 761 N.E.2d 826, 830 (Ind. 2002). Our supreme court held that long-standing "rules of statutory construction and common law described as double jeopardy"—not "the constitutional test set forth in *Richardson* "—barred the robbery enhancement in *Pierce.* *Id.* Seide, however, has failed to show *Pierce's* applicability to enhancements based on the use of a deadly weapon under these circumstances. Though the same weapon may have been involved, it was used six times to commit six offenses. First, Seide used the weapon to rob the three men initially. Second, Seide used the weapon to help hold the

three men at gunpoint for three hours following the robbery. Seide has failed to show any sort of double jeopardy violation for enhancing all six crimes committed with aid of the same weapon used six times.

In closing, we note that the trial court appears to have misspoken at sentencing. The CCS indicates that the jury found Seide guilty of three counts of robbery as class B felonies and three counts of criminal confinement as class B felonies. Appellant's App. p. 9. In entering judgment of conviction on the criminal-confinement verdicts, the trial court remarked that the jury returned verdicts finding Seide guilty of three counts of criminal confinement as *class D felonies.* Appellant's App. p. 125. The trial court then sentenced Seide "to the Department of Correction[ ] for a period of ten years, those ten years are to be executed at the Indiana Department of Correction[ ]. The Counts are to run concurrent with each other." Appellant's App. p. 134. Despite the trial court's pronouncement of the three class D felonies, the CCS shows that the trial court entered judgment of conviction on all six offenses as class B felonies. Appellant's App. p. 7. We conclude the trial court intended to

---

ment is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished;

—conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished (giving the example of enhancing one conviction for robbery by using a death for which the defendant is also being punished);

—conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished (giving the example of a battery conviction vacated because the information showed that the identical touching was the basis of a second battery conviction);

—conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished (giving the example of a confinement conviction vacated because it was coextensive with the behavior necessary to establish an element of a robbery conviction); and

—conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished (giving the example of a conspiracy in which the overt act is no more than the crime itself).

*See Guyton,* 771 N.E.2d at 1143.

enter judgment of conviction on the criminal-confinement guilty verdicts as class B felonies, and so we remand for entry of an abstract of judgment to reflect that intention.

Judgment affirmed and remanded.

RILEY, J., and MATHIAS, J., concur.